___ FILED ___ ENTERED
___ LOGGED ___ RECEIVED

5:07 pm, Sep 12 2022
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____Deputy

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A CELLPHONE CURRENTLY IN THE POSSESSION OF THE ATF BALTIMORE FIELD OFFICE IN BALTIMORE, MARYLAND | Case No.   22-2374-BAH<br><br>**FILED UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT**

I, Anthony Petrella, Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state as follows:

**I.    PURPOSE OF THIS AFFIDAVIT**

1. The ATF and Baltimore Police Department ("BPD") have been investigating Braydon MACAPAGAL for violations of 21 U.S.C. § 841 (possession with intent to distribute controlled substances); 18 U.S.C. § 922(g)(1) (possession of a firearm by a prohibited person) and 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime) (collectively the "**SUBJECT OFFENSES**").

2. I submit this affidavit in support of a search warrant authorizing the search of a cellphone identified below and further described in Attachment A, which were taken into ATF custody on August 15, 2022 and stored in a secure manner at the Baltimore Field Division of the ATF, located at 31 Hopkins Plaza, Suite 500, Baltimore, Maryland:

   a. A light blue and black Apple iPhone, with IMEI: 354106770302146 ("**SUBJECT TELEPHONE**").

3. I submit that there is probable cause to believe that the **SUBJECT TELEPHONE** contains evidence, fruits, and instrumentalities of the **SUBJECT OFFENSES**. The search warrant would authorize members of the ATF, or their authorized representatives including other law

Case 1:22-mj-02374-BAH   Document 3   Filed 09/13/22   Page 2 of 13

enforcement agents assisting in the above-described investigation, to examine the **SUBJECT TELEPHONE** for the purpose of seizing electronically stored data described in Attachment B.

4. I submit this affidavit for the limited purpose of establishing probable cause for a search warrant. I have not included every fact known to me concerning this investigation to date. Rather, I set forth only those facts I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information set forth in this affidavit derives from my personal knowledge and observations; discussions with other law enforcement officers and witnesses; and my review of police reports and public records. All conversations and statements described in this affidavit are related in substance and in part unless otherwise indicated.

## II. JURISDICTION

5. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## III. AFFIANT BACKGROUND AND EXPERTISE

6. I am "an investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

7. I have been a Special Agent with ATF since 2020 and am currently assigned to the ATF Baltimore Field Division, Group III. I attended the Department of Homeland Security's Criminal Investigator Training Program and ATF's Special Agent Basic Training for a combined

2

period of 26 weeks. I served as a federal police officer with the Supreme Court of the United States Police Department in Washington, D.C. for approximately six years before working for ATF.

8. I am currently participating in investigations concerning the illegal possession of firearms, controlled substance laws, and the commission of violent crimes by organized gangs. I received specialized training and personally participated in various types of investigative activities, including but not limited to: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants, and other individuals who have knowledge of firearms and controlled substance laws; (c) code words and phrases used by criminals when referencing firearms and narcotics; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance through the use of pen registers and trap and trace devices; and (g) the handling and maintenance of evidence; and (i) Title III investigations.

9. Based on my training and experience, I know the following about persons engaged in unlawful firearms possession, firearms trafficking, and illegal narcotics possession and the use of cellphones in furtherance of these activities, such as:

    a. The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and instrumentalities of pending criminal activity, like firearms. The **SUBJECT TELEPHONE** has both digital storage capacity and digital camera capabilities.

    b. Criminals often place nominal control and ownership of telephones and other electronic devices in names other that their own to avoid detection of those telephones by government agencies. Even though these are in the names of other people, criminals retain actual ownership, control, and use of the telephone and/or device, exercising dominion and control over them.

    c. Criminals often use different types of communication devices and change the numbers to these communication devices frequently. This is done to avoid detection by law enforcement personnel.

    d. Individuals who possess firearms and narcotics often use cellular phones to communicate privately with co-conspirators or to communicate with wider audiences to promote themselves or their acts.

    e. Cellular phones and other electronic devices capable of sending and/or receiving communications associated with criminals include various types of evidence. Phones may contain relevant text messages or other electronic communications; they may contain electronic address books listing the phone numbers and other contact information associated with co-conspirators; and they may contain other types of information.

    f. Criminals who engage in criminal activity with others take photos of themselves with high-end consumer items, like cars or watches, and other items they acquired during the crime. These "trophy" photos are often maintained on cellular telephones and electronic devices to be shared on social media, or as symbols of their success.

    g. Persons prohibited from possessing firearms will often utilize unlawful means of obtaining the firearms, such as burglary, theft, or trading them for narcotics. Information surrounding the unlawful transfer of firearms and their prohibited possession, including photos of the firearms to be transferred, is often memorialized within the possessor's cell phone.

    h. Cellular telephones may contain location information that indicate where a user of the cellphone was located before, during, and after a crime has occurred.

    i. The mere fact of a cellular phone's call number, electronic serial number or other identifying information may be of evidentiary value as it may confirm that a particular cell phone and/or electronic device is the phone identified during a wiretap, pen register, or other electronic investigation.

**IV. PROBABLE CAUSE**

  10. On July 26, 2022, at approximately 7:46 p.m., BPD detectives were on routine patrol in the 2400 block of Washington Boulevard, Baltimore, Maryland when they observed a Blue Honda Accord bearing New Jersey paper license plate 53641L9 operating with illegal window tinting. As the detectives were preparing to initiate a traffic stop on the vehicle it began traveling at a high rate of speed. The detectives followed the vehicle and observed it make a U-turn on Washington Boulevard and turn onto the I-95 ramp where it struck a concrete divider that disabled the vehicle.

  11. Detectives observed the driver and sole occupant of the vehicle, later identified as Braydon MACAPAGAL, exit from the vehicle, and begin to run down the I-95 ramp towards

Washington Boulevard. As MACAPAGAL was exiting the vehicle, detectives observed him discard a clear zip-lock bag, which they later recovered, and found to contain two smaller clear plastic bags of a white powdery substance, suspected cocaine. Several detectives pursued MACAPAGAL on foot, giving instructions to MACAPAGAL to stop running, while another detective remained with the vehicle and the discarded suspected cocaine. The detectives were able to apprehend him a short distance away from the I-95 ramp after he fell to the ground during the foot pursuit. Detectives conducted a search of MACAPAGAL and recovered a clear zip-lock bag containing ten white circular pills with the inscription "RP10", suspected oxycodone, from his pants pockets.

12. The detectives returned to the vehicle and conducted a search. During the search, detectives recovered **SUBJECT TELEPHONE** from the driver's seat area plugged into a charger near the center console. Detectives continued searching the vehicle and recovered a Glock, model 21, .45 caliber pistol, bearing serial number BCDK503, loaded with twelve rounds of .45 caliber ammunition from the area between the driver's seat and center console. No other individuals were in the car during the incident or afterwards.

13. I have reviewed MACAPAGAL's criminal record and learned that in March of 2022 he was convicted of Possession with Intent to Distribute Controlled Dangerous Substances and Possession of a Firearm by a Minor in the Circuit Court for Baltimore City (Case No. 121356002). He was sentenced concurrently to eight and five years in prison respectively, suspend all but four months and is currently on supervised release. There is now a pending violation of probation in that case. Therefore, MACAPAGAL is prohibited from possessing firearms and ammunition pursuant to 18 U.S.C. § 922(g)(1) and, based on the length of his sentence, I believe knows that he has previously been convicted of a crime punishable by more than one year in prison.

14.     BPD Firearms Lab test-fired the Glock and determined that it could expel a projectile by the action of an explosive, and, therefore, qualifies as a firearm under 18 U.S.C. § 921(a)(3). The firearm was not manufactured in Maryland and, therefore, affected interstate commerce prior to its recovery in Maryland on July 26, 2022.

15.     I became aware of BPD's investigation into MACAPAGAL on August 4, 2022. Since then, I have reviewed the evidence in this case and coordinated with BPD detectives to retrieve the **SUBJECT TELEPHONE**, which was submitted to BPD's evidence control unit. On August 15, 2022, I met with one of the BPD detectives and took control of the **SUBJECT TELEPHONE.**

16.     MACAPAGAL is currently incarcerated pending trial in the Circuit Court for Baltimore City. Since his arrest, I am not aware of him asking any law enforcement for the **SUBJECT TELEPHONE**.

## V.     FORENSIC ANALYSIS OF ELECTRONIC COMMUNICATIONS DEVICES

17.     Based on my training, I know that electronic devices such as cellular phones (smartphones) can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools. There is probable cause to believe that things that were once stored on the **SUBJECT TELEPHONE** may still be stored on those devices, for various reasons, as discussed in the following paragraphs.

18.     As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **SUBJECT TELEPHONE** were used, the purpose of their use, who used them, and when.

19. There is probable cause to believe that this forensic electronic evidence might be stored within the **SUBJECT TELEPHONE** because data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

20. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

21. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

22. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.

Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

23. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. Additionally, the known specifics for the **SUBJECT TELEPHONE** are detailed in Attachment A and the types of information expected to be recovered from the devices are listed in Attachment B.

## VI.   CONCLUSION

25. Wherefore, in consideration of the facts presented, I respectfully request that this Court issue a search warrant for the **SUBJECT TELEPHONE** and authorize the search for the information set forth in Attachment B, where applicable, which constitute fruits, evidence, and instrumentalities of possession with intent to distribute controlled substances in violation of 21 U.S.C. § 841; possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c).

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

ANTHONY PETRELLA
Digitally signed by ANTHONY PETRELLA
Date: 2022.08.23 09:00:48 -04'00'

Special Agent Anthony Petrella
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on August __23__, 2022.

Honorable Brendan A. Hurson

United States Magistrate Judge
District of Maryland

22-2374-BAH

**ATTACHMENT A**
**Devices to be Searched**

The following devices currently in the custody of the ATF Baltimore Field Division located at 31 Hopkins Plaza, Suite 500, Baltimore, MD:

a. A light blue and black Apple iPhone, with IMEI: 354106770302146 ("**SUBJECT TELEPHONE**").

1

22-2374-BAH

## ATTACHMENT B
### Items to be Seized

All records contained in the **SUBJECT TELEPHONE** (described in Attachment A), which constitute evidence of violations of 21 U.S.C. § 841 (possession with intent to distribute controlled substances); 18 U.S.C. § 922(g) (prohibited person in possession of a firearm), and 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime) including the following items, as outlined below:

1. Contact logs that refer or relate to the user of any and all numbers on the **SUBJECT TELEPHONE**.

2. Call logs reflecting date and time of received calls.

3. Any and all digital images and videos of persons associated with this investigation.

4. Text messages to and from the **SUBJECT TELEPHONE** that refer or relate to the crimes under investigation.

5. Records of incoming and outgoing voice communications that refer or relate to the crimes under investigation.

6. Voicemails that refer or relate to the crimes under investigation.

7. Voice recordings that refer or relate to the crimes under investigation.

8. Any data reflecting the phone's location.

9. Contact lists.

10. Any and all records related to the location of the user(s) of the devices.

11. Evidence of who used, owned, or controlled the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

12. evidence of software that would allow others to control the Devices, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

13. evidence of the lack of such malicious software;

14. evidence of the attachment to the **SUBJECT TELEPHONE** of other storage devices or similar containers for electronic evidence;

15. evidence of counter forensic programs (and associated data) that are designed to eliminate data from the Devices;

16. evidence of the times the **SUBJECT TELEPHONE** was used;

17. passwords, encryption keys, and other access devices that may be necessary to access the **SUBJECT TELEPHONE**;

18. documentation and manuals that may be necessary to access the Devices or to conduct a forensic examination of the **SUBJECT TELEPHONE**;

19. contextual information necessary to understand the evidence described in this attachment.

With respect to the search of any of the items described above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment (including CDs, DVDs, thumb drives, flash drives, hard disk drives, or removable digital storage media, software or memory in any form), the search procedure may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein, while permitting government examination of all the data necessary to determine whether that data falls within the items to be seized):

1. surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for markings it contains and opening a drawer believed to contain pertinent files);

2. "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

3. "scanning" storage areas to discover and possible recover recently deleted files;

4. "scanning" storage areas for deliberately hidden files; or

5. performing key word searches or other search and retrieval searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

If after performing these procedures, the directories, files or storage areas do not reveal evidence of the specified criminal activity, the further search of that particular directory, file or storage area, shall cease.

With respect to the search of the information provided pursuant to this warrant, law enforcement personnel will make reasonable efforts to use methods and procedures that will locate and expose those categories of files, documents, communications, or other electronically stored information that are identified with particularity in the warrant while minimizing the review of information not within the list of items to be seized as set forth herein, to the extent reasonably practicable. If the government identifies any seized communications that may implicate the attorney-client privilege, law enforcement personnel will discontinue its review and take appropriate steps to segregate all potentially privileged information so as to protect it from substantive review. The investigative team will take no further steps regarding any review of information so segregated absent further order of the court. The investigative team may continue to review any information not segregated as potentially privileged.